UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARLEEN F. MACMILLEN,

                              Plaintiff,

     v.                                             **DECISION AND ORDER**
                                                                14-CV-311S

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

      1.      Plaintiff Arleen F. Macmillen challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since August 26, 2010, due to cervical spine disorder, bursitis, lower back pain, and a knee disorder.

      2.      The Commissioner of Social Security ("Commissioner") denied Plaintiff's application for disability benefits on April 8, 2011, after which Plaintiff requested an administrative hearing.  Plaintiff received that hearing before Administrative Law Judge Marilyn D. Zahm on June 18, 2012.  The ALJ considered the case *de novo*, and on September 10, 2012, issued a decision denying Plaintiff's application.  Plaintiff filed a request for review with the Appeals Council, but the Council denied that request, prompting Plaintiff to file the current civil action on April 24, 2014, challenging Defendant's final decision.[1]

      3.      On December 29, 2014, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 7).  The

---

[1] The ALJ's September 10, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner followed suit with her own motion on March 27, 2015. (Docket No. 11). For the following reasons, the Commissioner's motion is granted and Plaintiff's motion is denied.

  4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla;" it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

  5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since August 26, 2010, her alleged onset date (R. at 19);[2] (2) Plaintiff's cervical spine disorder, bursitis, lower back pain, and knee disorder are "severe" impairments (R. at 19-20); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 20); (4) Plaintiff retains the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (R. at 20-24); and (5) given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.  Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from August 26, 2010, through the date of her decision.[3] (R. at 24).

10. Plaintiff raises two challenges to the ALJ's decision: first, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence; second, Plaintiff contends that the ALJ's conclusions about her credibility after May 2011 are not supported by

---

[2] Citations to the underlying administrative record are designated "R."
[3] The ALJ found that Plaintiff was not disabled because she could perform her past relevant work as a site manager (family case worker) (R. at 24).

substantial evidence.  Each argument will be discussed in turn.

11. Plaintiff first contends that the ALJ's finding regarding her RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) is not based on substantial evidence.  Specifically, Plaintiff claims that there are no medical opinions regarding her condition after May 2011, and that the ALJ's decision is impermissibly based on the ALJ's own interpretation of the medical data.  Plaintiff claims that the medical opinions in the record only pertain to the period during which Dr. Grand excused Plaintiff from work, specifically February 17, 2011, to April 5, 2011. (R. at 21).

During this time, both Dr. Grand and Dr. Dave opined about Plaintiff's condition.  On February 17, 2011, Dr. Grand noted that Plaintiff was exhibiting generalized muscle pain due to a reaction she had to a pneumonia vaccine. (R. at 21).  Due to this pain, Dr. Grand excused Plaintiff from work for the above mentioned time period.  Approximately one month later, on March 18, 2011, Dr. Dave determined that Plaintiff had moderate limitations regarding her right knee, kneeling, squatting, crouching, crawling, prolonged standing, walking and climbing. (R. at 21-22).  Plaintiff claims that no further medical opinions exist regarding her limitations after May 2011.

The ALJ is solely responsible for determining a claimant's RFC based on her evaluation of medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2).  The ALJ is not required to rely on a medical opinion in making her determination.  The Second Circuit has noted that "[a] lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012).

Plaintiff's argument is that the ALJ was not qualified to assess raw medical data pertaining to her medical conditions and that there were no medical opinions regarding her condition after May 2011. But the ALJ's decision references medical evidence pertaining to Plaintiff's condition after May 2011. For example, on June 3, 2011, Plaintiff visited Mary Kolbert, M.D., with complaints of low back pain. (R. at 22). Dr. Kolbert recommended physical therapy and capsaicin cream. (R. at 22). In July 2011, Plaintiff had a follow up appointment with Dr. Kolbert and was deemed to have a "normal range of motion for her age, full range of motion of the back, negative straight leg raises and only some tenderness with position changes." (R. at 22). In August 2011, Plaintiff met with Frederick McAdam, M.D., and underwent an updated MRI of the lumbar spine. (R. at 22). The MRI showed a lateral recess and spinal stenosis at L3-L4, lateral recess stenosis at L4-L5, posterior disc bulges at L1-L2, disc protrusion at T12-L1, evidence of spondylolistheses at L5-S1 and endplate changes. (R. at 22-23). In September 2011, Plaintiff met with Dr. Grand, who recommended a course in physical therapy. (R. at 23). On November 10, 2011, Plaintiff told Dr. Grand that she felt better and Dr. Grand found that she had "excellent muscle strength, full straight leg raises and normal gait and stance." (R. at 23).

None of these medical providers—all of whom saw Plaintiff after May 2011—recommended surgery, and in fact, Plaintiff does not even take prescription medication. (R. at 23). Further, the information from these providers supports the ALJ's determination that Plaintiff is not disabled. It is the ALJ, after all, not the medical providers, who is solely responsible making the disability determination after considering the medical evidence presented. See 20 C.F.R. §§ 404.1527(d)(2). Therefore, the ALJ properly concluded that the medical evidence, including evidence post-dating May 2011, is not consistent with Plaintiff's allegations regarding pain and limitations. From the medical evidence provided,

the ALJ properly found that Plaintiff could perform the full range of sedentary work. Accordingly, Plaintiff's first challenge is rejected.

12. Second, Plaintiff contends that the ALJ's conclusions about her credibility after May 2011 are not supported by substantial evidence. This argument is two-fold: Plaintiff argues that the ALJ should have afforded her subjective complaints "greater weight" and should have found her credible in light of her good work record.

13. Beginning with the first argument, Plaintiff contends that the ALJ failed to afford her testimony after May 2011 "greater weight" in her determination. Plaintiff alleges disability based on excruciating pain that greatly limits her daily activities. (R. at 20). Plaintiff testified that her daily routine consists of watching television, reading, using the computer, and napping. (R. at 20). Plaintiff contends that she rarely does household chores and never does yard work. (R. at 20). Plaintiff claims that she can walk for 15 minutes, stand for 15 to 20 minutes, and can carry 5 to 10 pounds. (R. at 21). Plaintiff contends that the ALJ erred by not finding this testimony credible.

Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982). "In determining the credibility of the individual's statements, the [Commissioner] must consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists . . . and any other relevant evidence in the case record." SSR 96-7P. As set forth in the regulations, the ALJ is charged with evaluating opinion evidence and deciding what weight to give any

medical opinion, including those rendered by treating sources. See 20 C.F.R. § 404.1527(d). An opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well supported. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record. Richardson v. Perales, 402 U.S. 389, 399 (1971).

The ALJ notes in her decision several reasons why she found Plaintiff's testimony only partially credible. Plaintiff visited several doctors in 2011. Doctors recommended physical therapy, which Plaintiff partook in, but Plaintiff refused recommended injections and rarely took prescribed medications. (R. at 23). And although Plaintiff testified that she could not participate in a sleep study because she was unable to fall asleep for the data to be collected, the record shows that Plaintiff actually fell asleep within 5 minutes after the sleep study began, which suggests that she does not have trouble sleeping to the extent that she claims she does. (R. at 23). These inconsistencies support the ALJ's credibility finding. (R. at 23). In addition, Plaintiff has taken little prescription pain medication and has not followed doctors' orders regarding injections, despite claiming debilitating pain. (R. at 23-24). The ALJ therefore found it difficult to believe that Plaintiff is in as much pain and is as severely limited as she claims, a finding that is supported by the record and well within her discretion to make.

14. Second, Plaintiff argues that her complaints should be found credible based on her good work record. "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. and Welfare, 623 F.2d 217, 219 (2d Cir. 1980)); see also Maggio v. Heckler, 588 F. Supp. 1243, 1246

(W.D.N.Y. 1984); Patterson v. Chater, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); Nelson v. Barnhart, No. 01-Civ-3671, 2003 WL 1872711, at *7 (S.D.N.Y. April 10, 2003). This is because a claimant with an established history of employment is unlikely to be "feigning disability." Patterson, 978 F. Supp. at 519. Accordingly, as courts in the Second Circuit have acknowledged, an ALJ's failure to consider a claimant's work history in an evaluation of his or her credibility is "'contrary' to the law in this circuit and the SSA's rulings." Pena v. Barnhart, No. 01 Civ. 502, 2002 WL 31487903, at *13 (S.D.N.Y. Oct. 29, 2002) (quoting Montes-Ruiz v. Charter, 129 F.3d 114 (Table) (2d Cir. 1997)).

But failing to mention work history will not, in itself, constitute reversible error when the ALJ's credibility assessment is based on objective medical evidence of a lack of a disability. Johnson v. Astrue, No. 07–CV–0322C, 2009 WL 3491300, at *6–*7 (W.D.N.Y. Oct. 23, 2009). In Johnson, the claimant had a 28-year work record, but the ALJ found that the objective medical evidence did not support the claimant's alleged disability. Id. at *6; see Chavis v. Astrue, No. 5:11-CV-00220, 2012 WL 6150851, at *1, *10 (N.D.N.Y. Sept. 21, 2012) (finding that despite a 12-year work record, the ALJ properly found that the objective medical evidence did not substantiate Plaintiff's claimed intensity, persistence and limiting effects of her symptoms); see Dutcher v. Astrue, No. 9-CV-1161, 2011 WL 1097860, at *8 (N.D.N.Y. March 7, 2011) (holding that despite an 18-year work record, the ALJ properly found that evidence of a disability during the time period at issue was lacking).

Here, Plaintiff contends that the ALJ should have given her past work record more weight in determining her credibility. Plaintiff had steady employment and earnings in the ten years leading to the onset of her alleged disability and reached her highest earnings in 2009, the year before her alleged disability began. (R. at 126). But Plaintiff is 56 years

9

old. (R. at 35-36). A work record of ten years for a 56-year-old individual is not a work record necessarily entitled to a presumption of credibility. In any event, the ALJ considered Plaintiff's past employment history in her decision. (R. at 24). And because the ALJ's credibility determination is centered around a lack of objective medical evidence to substantiate Plaintiff's claims, a fuller discussion of Plaintiff's work record was not required. See Johnson, 2009 WL 3491300, at *6-*7. Accordingly, Plaintiff's second challenge is rejected.

15. Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that her decision is based on substantial evidence. It will therefore grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:   June 19, 2015
         Buffalo, New York

                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge